**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RENITA BELTON and MATTHEW ERICKSON on behalf of themselves and all those similarly situated, | : : : : |
| Plaintiffs, | : CIVIL ACTION NO. : 1:10-CV-0583-RWS |
| v. | : : |
| STATE OF GEORGIA, *et al.*, | : : |
| Defendants. | : |

**<u>ORDER</u>**

This case comes before the Court on Plaintiffs' Motion for Class Certification [17]. For the reasons stated below, the court certifies the following class: All deaf Georgia citizens who are, or will be in need of public mental health services, but who cannot receive therapeutic benefit from said services due to the Georgia Department of Behavioral Health and Developmental Disabilities' lack of accommodations for the Deaf.

**Background**

This case arises out of the alleged failure of the Georgia Department of Behavioral Health and Development Disabilities ("DBHDD") to provide deaf

AO 72A
(Rev.8/82)

Georgians with equal access to public mental heath services.[1] (Pl.'s Br., Dkt. [17-1] at p. 1). The State of Georgia, through the DBHDD, provides publically funded mental healthcare services to those citizens who financially qualify. (Id. p. 2). These services include long-term residential group home programs, institutional care for acute mental illness, and treatment for drug addiction. (Id.). The DBHDD generally provides group home care through contracts with private companies or individuals called "providers." (Id.).

Plaintiffs are deaf adults who are profoundly mentally ill and developmentally disabled. (Pl's Rep. Br., Dkt. [39] at p. 1). They seek to represent the class of deaf Georgians who, because of their deafness, are denied the same access to mental health services as individuals without such disability. (Id.).

Plaintiff Renita Belton suffers from a number of mental illnesses including Major Depression, Obsessive Compulsive Disorder, and Mitochondrial Disorder. (Pl.'s Br., Dkt. [17-1] at p. 3). In May 2006, after the state's legal obligation to provide Belton with a public education ended,

---

[1] "Mental heath services" as used here includes services for mental illness, developmental disability, and addiction.

Belton's mother, Gale, applied for a Medicaid Home and Community Based Waiver ("waiver").[2] This waiver was designed to provide funding for group home care staffed by individuals trained to work with the mentally ill. (Id. at p. 4). The state approved Belton's waiver in November 2006. (Id.).

In searching for a group home provider for her daughter, Gale learned that no provider was set up to properly accommodate the Deaf. (Id. at p. 4). As a result, she purchased a home, at her own expense, and attempted to equip it for use as a group home for the Deaf and mentally ill. (Id. at p. 5). In April 2007, Belton finally located a provider that was willing to request an exceptional rate[3] to pay for deaf-appropriate services. (Id.; Def.'s Br., Dkt. [27] at p. 3). Belton currently receives one-to-one services in her home by staff trained in American Sign Language ("ASL"). (Def.'s Br., Dkt. [27] at p. 3).

---

[2] Waivers are the prime funding vehicle used to provide services to Georgia citizens who have mental retardation and/or developmental disabilities and meet eligibility requirements. (Ex. A, Def.'s Resp., Dkt. [27-1] at ¶ 7). Historically, funds were provided for institutional care. However, the federal government instituted the waiver program so that individuals could utilize funds to live in the community rather than an institution. (Id.).

[3] An exceptional rate is authorized when the costs associated with the services of a particular person cannot be covered by the standard rate. (Ex. A, Def.'s Resp., Dkt. [27-1] at ¶ 10). These rates are based on enhanced staffing needs, specialized staffing, and increased direct staffing or oversight of a Developmental Disabilities Professional. (Id.).

Plaintiff Matthew Erickson is a deaf, 22-year-old male who suffers from Bipolar Disorder, Obsessive Compulsive Disorder, Asperger Syndrome, and Pervasive Developmental Disorder Spectrum. (Pl.'s Br., Dkt. [17-1] at pp. 5-6). Like Belton, when Erickson turned 22 he "aged out" of his legal right to a public education. (Id. at p. 6-7). His family, like Belton's, applied for a Medicaid waiver to fund residential mental health treatment. (Id. at p. 7). However, none of the DBHDD-approved providers were staffed to provide deaf-appropriate services including ASL trained counselors. (Id.). There is a factual dispute regarding whether Erickson was able to locate an appropriate group home setting to accommodate his needs.[4]

Plaintiffs allege that they are two of the many hundreds of deaf Georgians who are denied a meaningful benefit from public heath services due to the DBHDD's failure to allocate funding to deaf-appropriate services. (Id.). Because there are no group home facilities designed to accommodate deaf

---

[4]Plaintiffs assert that Erickson was unable to locate an appropriate group home and therefore spends most of his time at home with little to no interaction with mental health professionals trained to work with the Deaf. (Pl.'s Br., Dkt. [17-1] at p. 7). Defendant, on the other hand, claims that Erickson rejected providers for frivolous reasons. (Def.'s Br., Dkt. [27] at p. 5). Moreover, some of the providers offered either to have current staff improve their signing skills or to hire ASL fluent staff. (Id.).

4

individuals suffering from mental illness, Plaintiffs allege that the Deaf are denied the same benefits enjoyed by hearing individuals (Id.).

## Discussion

### I.   Standing

Plaintiffs seeking to certify a class must first show that they have standing to bring their claim. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L. Ed. 2d 343 (1975). "Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made." Rhodes v. Cracker Barrel, 213 F.R.D. 619, 672 (N.D. Ga. 2003) (quoting Angel Music, Inc. v. ABC Sports, Inc., 112 F.R.D. 70, 73 (S.D.N.Y.1986)). Before the court can certify a class or undertake a commonality and typicality review, the "court must determine that at least one named class representative has Article III standing to raise each class subclaim." Id. (quoting Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)). Each asserted claim must be analyzed separately, "and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." Prado-Steinman, 221 F.3d at 1280 (quoting Griffin v. Dugger, 823 F.2d 1476, 1483 (11th Cir. 1987)). To possess

Article III standing, a plaintiff must have an injury in fact, there must be a causal connection between the injury and the defendant's conduct, and the injury must be redressable by a court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L. Ed. 2d 351 (1992).

Despite Defendant's assertion to the contrary, Belton and Erickson have standing to bring this putative class action against the DBHDD. Defendant claims that Plaintiffs have not suffered an injury because they received Medicaid waivers at the exceptional rate. (Def.'s Br., Dkt. [27] at pp. 8-9). Moreover, according to Defendant, Belton receives one-to-one care in her home and Erickson can avail himself of a day program and employment services from the Department's providers. (Id.). Defendant claims that because Plaintiffs are receiving significant services, they have no injury-in-fact and therefore do not have standing to bring their claim. (Id.).

Despite the grant of Medicaid waivers, Plaintiffs contend that they were unable to obtain adequate services in a community setting as a result of their disability.  Plaintiffs argue that the Medicaid waivers did not eliminate their injury because the DBHDD's failure to provide broader funding for deaf-appropriate mental health services results in a lack of appropriate community-

6

based treatment options for the Deaf. Without sufficient funds, group homes cannot staff ASL-proficient care givers or ASL interpreters. The lack of mental health staff trained to communicate with the Deaf makes it difficult for the Deaf to derive benefit from the services and/or funds that the DBHDD does provide. For instance, in seeking out community-based treatment options, Plaintiffs Belton and Erickson claim that they were unable to locate appropriate services. In contrast, hearing individuals who do not require special services in order to communicate with counselors, have the opportunity to receive mental health services in either individualized settings or in group homes.

Plaintiffs allege that the DBHDD has failed to properly support a system that provides mental health services to the Deaf. Plaintiffs assert that the absence of such services denied them proper access to mental health services that can accommodate their needs. The waivers are insufficient if there are not qualified providers in the community to provide the necessary services. Plaintiffs' injury is not the denial of the waiver, but rather that they were unable to translate that waiver into the receipt of appropriate services. Because Plaintiffs have an injury-in-fact, they have standing to bring suit.

7

**II.     Rule 23 Certification**

    A.     <u>Standard for Class Certification</u>

Rule 23 of the Federal Rules of Civil Procedure establishes the criteria for certifying a case as a class action. Specifically, "[a] class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." <u>Rutstein v. Avis Rent-A-Car Sys., Inc.</u>, 211 F.3d 1228, 1233 (11th Cir. 2000) (quoting <u>Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1005 (11th Cir. 1997)). The party seeking class certification bears the burden of establishing that the requirements of Rule 23 have been satisfied. <u>Id.</u>

Under Fed. R. Civ. P. 23(a), an action may be maintained as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims of the defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These four requirements are commonly referred to as "numerosity," "commonality," "typicality," and

8

"adequacy." See, e.g., Franze v. Equitable Ins., 296 F.3d 1250, 1253 (11th Cir. 2002).

Once these four elements are met, the plaintiffs must establish that their claims meet one of the requirements of Rule 23(b). That is, that either (1) the prosecution of separate actions by class members would risk inconsistent adjudications or would impair individual class members' ability to protect their interests; or (2) the defendant has acted on grounds generally applicable to the class, making final injunctive or declaratory judgment to the whole class appropriate; or (3) that questions of law or fact common to class members predominate over individual issues and that a class action is superior to other methods for the fair and efficient adjudication of the claims. FED. R. CIV. P. 23(b); Murray v. Auslander, 244 F.3d 807, 810 n.3 (11th Cir. 2001) (citing Moore v. Am. Fed'n of Television & Radio Artists, 216 F.3d 1236, 1241 (11th Cir. 2000)).

  B. Rule 23(a)

    1. *Numerosity*

The first requirement of Rule 23(a) asks whether "there are so many members of the class that joinder of them all is impracticable." Begley v. Acad.

9

Life. Ins. Co., 200 F.R.D. 489, 495 (N.D. Ga. 2001). Defendant does not challenge that joining all of the plaintiffs would be impracticable. (Def.'s Br., Dkt. [27] at p. 14). According to Plaintiffs, it is estimated that there are approximately 3,387 Deaf individuals with severe mental illness in Georgia. (Pl.'s Br., Dkt. [17-1] at p.16). Plaintiffs acknowledge that the discovery process will be necessary to identify precisely how many individuals require deaf-appropriate services. (Id.). Nonetheless, joinder of the potential class members appears to be impracticable.

Although not an express Rule 23 requirement, it is imperative that a proposed class be definable in a reasonable manner. "In order for a party to represent a class, 'the class sought to be represented must be adequately defined and clearly ascertainable.'" Adair v. Johnston, 221 F.R.D. 573, 577 (M.D. Ala. 2004) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)); see also Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 52-53 (D. Conn. 2004) (class certification improper unless class is sufficiently definite to render it administratively feasible for court to determine membership of particular individuals without mini-hearings). Defendant asserts that the class as defined

10

by Plaintiffs is inadequately defined because the potential class is too broad. (Def.'s Br., Dkt. [27] at pp. 14-17).

The class certified by the court eliminates the definability concerns articulated by Defendant. First, the class no longer includes the families and guardians of the class members. Second, the term "adversely affected" was limited to individuals "who cannot receive therapeutic benefit" from mental health services. The class certified by this court is sufficiently definite and clearly ascertainable. Therefore, the numerosity requirements are satisfied.

### 2. *Commonality*

Commonality requires that the class have one or more questions of law or fact in common. In Re Scientific Atlanta, 571 F. Supp. 2d 1315, 1325 (N.D. Ga. 2007). This requirement measures the extent to which all members of the class have similar claims. Id. (quoting Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001)). "To prove a sufficient nexus, Plaintiffs must demonstrate that their claims 'share the same essential characteristics as the claims of the class at large.'" Id. (quoting Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004)).

11

Defendant alleges that Plaintiffs' claims do not share the same characteristics as the claims of the other class members and therefore the commonality requirement of Rule 23 is not met. (Def.'s Br., Dkt. [27] at p. 17). The reasons underlying Defendant's commonality argument are similar to those underlying the standing argument: Plaintiffs have received funding from the DBHDD and therefore they do not share a common obstacle with the other class members who have not received funds. (Id. at p. 18).

There is a sufficient nexus between the legal claims of the Plaintiffs and the other class members. The DBHDD's failure to provide funds for deaf-appropriate mental health services means that all class members cannot obtain therapeutic benefits from mental health services. Although Plaintiffs received waivers, they remain unable to derive therapeutic benefit from group mental heath facilities because of the lack of ASL-trained staff. Therefore, each deaf Georgian in need of mental health services suffers from the same injury: the DBHDD's failure to provide funds for deaf-appropriate mental health services that are equivalent to the services available to non-deaf individuals.

12

3.   *Typicality*

A class representative, in order to meet the typicality requirement, must have the same interest and injury as the class members. In Re Scientific Atlanta, 571 F.Supp.2d at 1315. This requirement is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise legal claims." Prado-Steinman, 221 F.3d at 1279.

Like the other putative class members, the named Plaintiffs are deaf, suffer from mental illnesses, and have been unable to receive the same therapeutic benefits from mental health services as hearing individuals because of the DBHDD's failure to provide funding. Moreover, Plaintiffs have standing to bring this suit because they suffer from the same injury as the other class members. As a result, the typicality requirement is satisfied in this case.

### 4. *Adequacy*

Rule 23(a)(4) requires that the named representatives "will fairly and adequately protect the interests of the Class." FED. R. CIV. P. 23(a)(4). "The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to the rest of the class." Griffin v. Carlin, 755 F.2d 1516, 1533 (11th Cir. 1985).

Defendant contends that because Plaintiffs have received funding to pay for mental health services, "they cannot be found . . . to have the interest necessary to pursue the litigation fully on behalf of the non-representative class member." (Def.'s Br., Dkt. [27] at p. 21). The interests of the named Plaintiffs are sufficiently similar to the rest of the class to satisfy the adequacy prong. They all suffer from the failure of the state to fund public mental health services that are accessible to the Deaf. Moreover, Defendant has not objected to the adequacy of Plaintiffs' chosen council and the court finds no cause for concern. As such, the proposed class representatives and their counsel meet the adequacy requirement for class certification.

C.     Rule 23(b)

The court certifies the class as a Rule 23(b)(2) class. Certification of a class under Rule 23(b)(2) is appropriate where a defendant has "acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). In the present case, the DBHDD has "acted or refused to act on grounds generally applicable to the class" by failing to provide funding for deaf-appropriate mental health services. Moreover, the predominant relief requested by the class is a judgment declaring that the state has discriminated against the Deaf in its funding of public mental health services, and equitable relief requiring the state to make those services accessible to the Deaf. (Compl., Dkt. [1] at pp. 19-21). Therefore, the class satisfies the requirements of Rule 23(b)(2).

A Rule 23(b)(3) class is not appropriate in this case. There are two requirements for Rule 23(b)(3): that questions of law or fact common to members of the class predominate over any questions affecting individual members and that a class action is the superior method of resolving the controversy. Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 671

(N.D. Ga. 2001). The predominance requirement of Rule 23(b)(3) is not met under the present circumstances. The proposed class suffers from a variety of mental heath disorders. The differing diagnoses of the class members require individualized inquiries and individual proof as to the level of treatment and support he or she requires.  Therefore, individual questions of fact predominate over common questions affecting the entire class.

Plaintiffs also suggest that since they are requesting "individual compensatory damage awards" along with equitable relief, the Court could treat the action as a hybrid of Rules 23(b)(2) and 23(b)(3). (Pl.'s Br., Dkt. [17-1] at p. 24). In hybrid cases, the fact that damages are sought as well as an injunction or declaratory relief is not fatal to a request for a (b)(2) suit, as long as the resulting hybrid case can be fairly and effectively managed. See Holmes v. Continental Can Co., 706 F.2d 1144, 1158 (11th Cir. 1983). The examples of hybrid cases cited by Plaintiffs do not support certifying this class as a hybrid. Those cases involve classes requesting *back pay* as well as injunctive relief. See Holmes, 706 F.2d at 1145; Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1554 (11th Cir. 1986).  In fact, the Eleventh Circuit specifically noted that "a hybrid Rule 23(b)(2) class action is one in which class members seek individual

16

monetary relief, *typically back pay*, in addition to class-wide injunctive or declaratory relief." Cox, 784 F.2d at 1554 (emphasis added). Damage awards for back pay are relatively easy to calculate. Any damages calculation in this case would be highly individualized and would require multiple distinct fact intensive analyses. As a result, a hybrid class is not appropriate under these circumstances.

Because Plaintiffs have established all four Rule 23(a) requirements and the requirements of 23(b)(2), Plaintiffs' Motion for Class Certification [17] is **GRANTED.**

## Conclusion

For the aforementioned reasons, Plaintiffs' Motion for Class Certification [17] is **GRANTED.** The court certifies the following class: All deaf Georgia citizens who are, or will be in need of public mental health services, but who cannot receive therapeutic benefit from said services due to the Georgia Department of Behavioral Health and Developmental Disabilities' lack of accommodations for the Deaf.

17

**SO ORDERED** this   14th   day of March, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE