# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

RENITA BELTON and : 
MATTHEW ERICKSON, on : 
behalf of themselves and all those : 
similarly situated, : 
 : 
 : CIVIL ACTION NO.
    Plaintiffs, : 1:10-CV-0583-RWS
 : 
v. : 
 : 
STATE OF GEORGIA, et al., : 
 : 
    Defendants. : 

## **ORDER**

The Plaintiffs' Motion for Appointment of a Monitor (Dkt. [147]) is hereby **GRANTED** with the consent of Defendants. The Parties have jointly selected Roger Williams as the Monitor and Independent Expert ("Monitor") to assist the Court and the Parties in the development of the remedial order and its implementation. The Court has reviewed Mr. Williams's experience and qualifications and hereby appoints him to serve as Monitor.

The Monitor's initial responsibility will be to develop a comprehensive remedial order for the Court's consideration. As was emphasized at the January 4, 2013 remedy hearing, a remedial order needs to be put in place without

further delay. In that regard, counsel for Defendants represented at the January 4th hearing that Defendants had a detailed proposal that they were prepared to present. The Court directed Defendants to file their proposal so that it could be reviewed by Plaintiffs and the Court. Defendants subsequently requested and were granted additional time to January 16, 2013 in which to file their proposed remedial plan. Plaintiffs filed a remedy proposal prior to the January 4th hearing (Dkt. [135-1]).

After Defendants submitted their proposal, Plaintiffs' counsel, Defendants' counsel, and Judy Fitzgerald, Deputy Commissioner for the Department of Behavioral Health and Developmental Disabilities ("DBHDD"), met on February 7, 2013, in an effort to agree to as many aspects of a final settlement agreement and remedial order as they were able. The Parties will report to the Monitor, by a date set by the Monitor, regarding the status of their discussions, including the terms of all agreements, the nature of disagreements, and their respective positions and proposals. Upon review of those submissions, the Monitor shall make such efforts as he deems appropriate to discuss areas of disagreement with the Parties, achieve such further agreements as he determines to be appropriate, and develop a comprehensive remedial plan

2

to recommend for the Court's consideration, again keeping in mind the Court's desire to implement a comprehensive remedy at the earliest practicable date.

Upon the adoption of a final remedial order by the Court, the Monitor will then be responsible for overseeing implementation and compliance with the terms of the order and recommending to the Court such modifications of the order, if any, that may become necessary during the implementation of the remedial order. During the implementation phase, the Monitor shall conduct such factual investigations and verification of data and documentation as may be necessary to determine whether the State is in compliance with the terms of the remedial order. The Monitor will periodically file with the Court a written report of the State's performance within 45 days after the close of each review period. Initially, each review period will be four months long, with the first review period beginning to run on the date the remedial order is entered.[1] The Monitor will provide counsel for all Parties a draft of his report at least 14 days before filing the report with the Court. Both Parties will have 7 days thereafter to review and comment on the proposed report before it is filed with the Court.

---

[1] As implementation proceeds, the Monitor may recommend that the length of the review periods be extended.

3

The Parties may agree to allow the Monitor an additional 21 days to finalize a report after he receives comments from the Parties, and such an extension does not require Court approval. Either Party may file a written report with the Court noting objections to portions of the Monitor's report.

The following provisions will apply to the activities of the Monitor in carrying out his responsibilities pursuant to this Order.

A. *Ex Parte* Communications:

In connection with any of his activities and responsibilities pursuant to his appointment, the Monitor may have *ex parte* communications with the Parties and the Court at any time, and may communicate *ex parte* with other stakeholders, at his discretion, including employees of Defendants and the Parties' experts (including Dr. Barry Critchfield).

B. Testimony:

The Monitor may testify in this case regarding any matter related to the adoption, implementation, enforcement, or modification of the remedial order, including but not limited to the Monitor's observations, findings, and recommendations in this matter.

AO 72A
(Rev.8/82)

C. The Monitor and any hired staff or consultants shall not be:

1. Liable for any claim, lawsuit or demand arising out of the performance of his duties as Monitor;

2. Subject to formal discovery, including, but not limited to, deposition(s), request(s) for documents, request(s) for admissions, interrogatories, or other disclosures. The Parties are not entitled to access the Monitor's records or communications, although the Monitor may provide copies of records or communications at his discretion. The Monitor shall not make public statements nor release documents except as may be filed with the Court or as the Court may otherwise permit. The Court may review all records of the Monitor at the Court's discretion.

D. Access to Defendants' Facilities, Records and Employees:

To carry out his responsibilities under this Order, including the formulation and determination of the appropriate remedy to implement this Court's Order of March 30, 2012 (Dkt. [115]), the Monitor will have full access to persons, employees, residences, facilities, buildings, programs, services, documents, records, and such other places, items or materials that the Monitor deems necessary to assist in carrying out his or her responsibilities. The

Monitor may also enter any facility or program that provides services that are subject to the remedial order and may interview, on a confidential basis or as otherwise necessary, persons who are recipients or eligible to be recipients of services affected by the remedial order, so long as such person agrees thereto. The provision of any information to the Monitor pursuant to this Order shall not constitute a waiver of any privilege that would otherwise protect the information from disclosure to third parties. Any individually identifying health information the Monitor or his or her consultants or staff receive or maintain shall be kept confidential. Access to Community Service Boards (CSB) and Private Providers shall be at the sole discretion of the CSB or private provider; however, DBHDD will encourage those entities to provide such access and will assist the Monitor with contacting them. The Monitor shall exercise the access under this Order in a manner that is reasonable and not unduly burdensome to the operations of DBHDD.

E.   Defendants' Records Regarding Compliance:

DBHDD, through its employees or agents, will collect data with regard to each element of required performance under the terms of the remedial order and make it available on a timely basis to the Monitor and counsel for Plaintiffs.

F.   Payment of the Monitor:

1.   The Monitor shall be paid by Defendants at the rate of $100.00 per hour for all time, including travel, he devotes to those tasks he performs pursuant to his appointment.

2.   Within the first 60 days of appointment, the Monitor shall submit to the Court for approval a proposed budget for Fiscal Year 2014.  Using the proposed budget for Fiscal Year 2014, the Monitor shall also propose an equivalent amount prorated for the remainder of Fiscal Year 2013.

3.   The Monitor will provide the Parties a draft of the proposed budget at least thirty days in advance of submission to the Court.  The Parties shall raise with the Monitor any objections they may have to the draft of the proposed budget within 10 days of receipt.  If the objection is not resolved before the Monitor's submission of the proposed budget to the Court, a party may file the objection with the Court within 10 days of submission of the proposed budget to the Court.  The Court will consider such objections and make any adjustments the Court deems appropriate prior to approving the budget.

7

3. Thereafter the Monitor shall submit an annual proposed budget to the Court in accord with the process set forth above.

4. The Monitor may hire staff and consultants to assist with the monitoring duties. The cost of the Monitor, including the reasonable cost of any consultants of the Monitor as may be necessary, shall be borne by Defendants. All reasonable expenses incurred by the Monitor in the course of the performance of his duties shall be paid by Defendants no later than 30 days after submission. The Court retains the authority to resolve any dispute that may arise regarding the reasonableness of fees or costs incurred or charged by the Monitor. If a dispute arises regarding the reasonableness of fees or costs, the Court may require the Monitor to provide an accounting justifying the fees or costs. The Monitor shall not enter into any contract with the State of Georgia or any of its departments or agencies while serving as Monitor and for a period of one year after the termination of the monitorship unless Plaintiffs agree to such contract and it is disclosed to the Court prior to taking effect.

G. Substitution of Monitor:

In the event that the Monitor were to become unable to fulfill his duties, the Parties will endeavor to agree on a proposed replacement to recommend to

8

the Court. If they are unable to agree within 14 days after termination of the Monitor's services, Plaintiffs and Defendants shall each submit the names of up to two candidates to the Court, and the Court shall appoint a replacement.

F.      Termination:

1.      At such time as the Monitor determines that Defendants have demonstrated substantial compliance with the terms of the Court's Order for remedy, the Monitor shall submit a final report to the Court. Substantial compliance is achieved where any violations of the Order for remedy are minor or incidental and are not systematic.

2.      The Monitor will provide counsel for the Parties a draft of the final report at least 14 days before filing the report with the Court. The Parties will have 7 days thereafter to review and comment on the proposed final report before it is filed with the Court. The Parties may agree to allow the Monitor an additional 21 days to finalize a report after receipt of comments from the Parties, and such an extension does not require Court approval. The Parties may provide the Court documentation in support or response to the Monitor's final report.

3. If at any time Defendants believe they have achieved compliance with a portion of the Order for remedy, they shall so notify the Monitor and the Court, and may request that the Court release them from that portion of the Order.

**SO ORDERED**, this  14th  day of February, 2013.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

10