**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| RENITA BELTON and | : | |
| MATTHEW ERICKSON on | : | |
| behalf of themselves and all those | : | |
| similarly situated, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 1:10-CV-0583-RWS |
| | : | |
| v. | : | |
| | : | |
| STATE OF GEORGIA, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendants' Motion to De-Certify

Class and to Dismiss for Lack of Standing [139], Defendants' Motion to Strike

Affidavits [184], and Plaintiffs' Motion to Expedite Response [195].  After

reviewing the record, the Court enters the following Order.

### Background

On March 3, 2010, Plaintiffs Renita Belton and Matthew Erickson, on

behalf of themselves and all those similarly situated, brought this action

pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12101 et seq., and Section 504 of the Rehabilitation Act ("Section 504"), 29

U.S.C. § 701 et seq., alleging that Defendants failed to provide Deaf Georgians

access to state-provided behavioral health and developmental disability services

equal to that afforded to non-Deaf Georgians.  (Compl., Dkt. [1].)  On March

14, 2011, the Court certified this case as a class action on behalf of "[a]ll Deaf

Georgia citizens who are, or will be in need of public mental health services,

but who cannot receive therapeutic benefit from said services due to the

Georgia Department of Behavioral Health and Development Disabilities' lack

of accommodations for the Deaf."  (Order, Dkt. [82] at 1.)  Plaintiffs

subsequently filed a Motion for Summary Judgment on the issue of Defendants'

liability under Title II of the ADA and Section 504 (Dkt. [88]), which the Court

granted by Order dated March 30, 2012 (Dkt. [115]).

   In the Court's Order granting Plaintiffs summary judgment, the Court

found that the State of Georgia failed to provide Deaf Georgians with

meaningful access to the mental health care services provided to the general

public.  In particular, the Court found that the named Plaintiffs, because of their

deafness, had been denied access to group home living, a mental health care

service provided by the State to the general public.  (Order, Dkt. [115] at 21-

31.)  The Court held,

2

> In short, Defendants have presented no evidence to rebut Plaintiffs'
> showing that despite their efforts, neither [named Plaintiff] could
> find a State-provided group home that could accommodate a Deaf
> consumer's need to communicate with those around him or her
> using ASL [American Sign Language].  Absent the ability to
> communicate with others, the evidence shows that neither Belton
> nor Erickson would be able to realize the therapeutic benefit of
> group home living.  Thus, the named Plaintiffs have proven that,
> because of their deafness, they have been denied meaningful
> access to a mental health care service provided by the State to the
> general public.

(Id. at 30.)  The Court also found that "the Plaintiff Class has been denied meaningful access to the State's mental health services as a result of multiple failures on the part of Defendants to reasonably accommodate the needs of the Deaf."  (Id. at 31.)  In particular, the Court found that the State has failed to provide Deaf-appropriate group home care to the Plaintiff Class, faces a severe shortage of ASL-fluent mental health care practitioners, and fails to reimburse health care providers for the cost of interpreters.  (Id. at 31-41.)  The Court concluded, "In sum, Plaintiffs have . . . prove[n] as a matter of law that Deaf consumers, because of their Deafness, and as a result of several institutional failures on the part of the State, are denied meaningful access to the mental health care services provided by the State to the general public."  (Id. at 41.)

3

After finding Defendants liable under the ADA and Section 504, the Court referred the case to mediation concerning the issue of a remedy, reasoning that an appropriate remedy would best be developed through a collaborative effort by the Parties.  (Order, Dkt. [115] at 41-42.)  Mediation, however, was not successful.  Following the Parties' failed attempts to craft a remedy through mediation, the Court appointed Mr. Roger Williams to serve as Monitor and Independent Expert ("Monitor") to assist the Court and the Parties in the development of a remedial order and its implementation.  (Order, Dkt. [166].)  On April 18, 2013, the Monitor submitted to the Court and the Parties a proposed remedial order, and the Parties submitted comments on the proposed remedial order to the Court.  The Court subsequently entered an Order, setting out the actions Defendants must take to remedy their previously-found violations of the ADA and Section 504.  (See generally Order (the "Remedial Order"), Dkt. [174].)

Following the Court's entry of summary judgment in favor of Plaintiffs on the issue of liability and prior to entry of the Remedial Order, Defendants filed their Motion to De-Certify Class and to Dismiss for Lack of Standing. Following the filing of Plaintiffs' Response [176], Defendants filed a Motion to

4

Strike Affidavits [184] seeking to strike the affidavits submitted as exhibits to Plaintiffs's Response.

## Discussion

Federal Rule of Civil Procedure 12(f) states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous mater . . . ." Generally, "[a]n affidavit is not a pleading subject to a motion to strike." <u>Argonaut Midwest Ins. Co. v. McNeilus Truck and Mfg., Inc.</u>, No. 1:11-CV-3495-TWT, 2013 WL 489141, at *1 (N.D. Ga. Feb. 8, 2013); see also <u>Southard v. State Farm Fire and Cas. Co.</u>, No. 4:11-CV-243, 2013 WL 209224, at *7 (S.D. Ga. Jan. 17, 2013) ("[A] motion to strike is not the proper procedural vehicle to challenge affidavits.  Affidavits are not pleadings." (internal citations omitted).

To the extent Defendants' motion raises evidentiary objections to Plaintiffs' submissions, "[r]ather than striking a document or a portion thereof, it is usually more appropriate to consider a party's objections to affidavits which are filed in support of a motion . . . when ruling on the merits of a motion." <u>Haynes v. Twin Cedars Youth and Family Servs.</u>, No. 5:10-CV-321(CAR), 2012 WL 895699, at *5 (M.D. Ga. March 15, 2012).  When

addressing the merits of a motion, "a court may strike or disregard the improper

portions of an affidavit submitted in connection with a motion . . . , and

consider the remainder of the testimony or statement." Id. at *7 (citing Lee v.

Nat'l Life Assurance Co. of Canada, 632 F.2d 524, 529 (5th Cir. 1980).

Rather than strike the contested material, the Court has exercised its

discretion and disregarded any improper testimony in considering the merits of

Defendants' motion.  Accordingly, Defendants' Motion to Strike Affidavits

[184] is **DENIED**.

In Defendants' Motion to De-Certify Class and to Dismiss for Lack of

Standing [139], Defendants argue that Plaintiffs lack standing "as to the claim

of denial of access to interpreters due to cost" and therefore do not satisfy the

typicality requirement of Rule 23(a)(3):

> Plaintiffs have pointed to no record evidence that either named
> plaintiff has been denied access to an interpreter due to the related
> cost. . . .  As a result, neither named Plaintiff is an adequate class
> representative as to the claim that the class is being denied access
> to an "interpreter" due to cost and does not have standing to
> represent the "class" with respect to the claim of denial of access to
> interpreters due to cost.  Thus, the "class" needs to either find
> Plaintiffs who do have standing or it needs to be decertified as to
> this claim, as under Rule 23(a)(3) the claims of the proposed class
> representatives must be "typical of the class."

6

(Defs.' Br. in Supp. of Mot. to De-Certify Class and to Dismiss for Lack of Standing ("Defs.' Br."), Dkt. [139-1] at 4.)

As stated in the Court's Order certifying the Plaintiff class (Dkt. [82] at 5-6), Plaintiffs seeking to certify a class must first show that they have standing to bring their claim. <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975). "Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made." <u>Rhodes v. Cracker Barrel Old Country Store, Inc.</u>, 213 F.R.D. 619, 672 (N.D. Ga. 2003) (internal quotations and citation omitted). To have Article III standing, a plaintiff must have an injury in fact, there must be a causal connection between the injury and the defendant's conduct, and the injury must be redressable by a court. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).

The requirement of "typicality" comes from Federal Rule of Civil Procedure ("Rule") 23, which establishes the criteria for certifying a case as a class action. Under Rule 23(a), an action may be maintained as a class action only if, among other things, "the claims or defenses of the representative parties are typical of the claims or the defenses of the class." Fed. R. Civ. P. 23(a)(3).

7

This requirement is commonly referred to as the requirement of "typicality." See, e.g., Franze v. Equitable Ins., 296 F.3d 1250, 1253 (11th Cir. 2002).

To satisfy the typicality requirement, a class representative must have the same interest and injury as the class members.  In Re Scientific Atlanta, Inc. Securities Litigation, 571 F. Supp. 2d 1315, 1315 (N.D. Ga. 2007).  This requirement is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class.  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). "It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise legal claims."  Prado-Steinman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000).

The Court finds Defendants' arguments to be without merit.  As already determined in the Court's Order granting class certification (Dkt. [82]), the named Plaintiffs have standing to assert the claims raised in this case—that Defendants violated the ADA and Section 504 by depriving Deaf consumers of equal access to the State's mental health care services due to a lack of accommodations for the Deaf.  The named Plaintiffs have been deprived access

8

to a State-provided mental health care service, in particular, group home living, as a result of Defendants' failure to make reasonable accommodations for the Deaf.  Thus, they have suffered an injury in fact as a result of Defendants' conduct, and the injury is redressable by this Court.  Accordingly, the named Plaintiffs have standing to raise the ADA and Section 504 claims asserted in this case.

The claims of the named Plaintiffs are also "typical" of the claims of the Plaintiff Class.  The claims of the named Plaintiffs and of the Plaintiff Class arise from the same conduct—Defendants' failure to make its mental health care services meaningfully available to the Deaf—and are based on the same legal theory—that this failure runs afoul of Title II of the ADA and Section 504. It is immaterial that the named Plaintiffs and other members of the Plaintiff Class may have been deprived of access to the State's mental health care services in different ways or through different means (e.g., through a lack of deaf-appropriate group homes or ASL interpreters).  See, e.g., Kornberg, 741 F.2d at 1337 ("Typicality, however, does not require identical claims or defenses.  A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from

that of other members of the class."). The named Plaintiffs, like every other member of the Plaintiff Class, have been unable to share in the mental health care services provided by Defendants to the general public, as a result of Defendants' failure to make these services accessible to the Deaf. The requirement of "typicality" therefore is satisfied. Defendants' Motion to De-Certify Class and to Dismiss for Lack of Standing [139] is **DENIED**.

Defendants have also filed a Motion and Amended Motion to Stay Implementation of Sections of Remedy Order during Appeal [187 & 191]. In response, Plaintiffs filed a Motion to Refer the Stay Request to the Monitor for Review and Evaluation [194] and a Motion to Expedite the Response to the Motion to Refer [195]. The Court has advised the Monitor that a Motion to Stay has been filed, but that it is not yet fully briefed. If the Court is to receive meaningful input from the Monitor, that input is needed expeditiously. Therefore, Plaintiffs' Motion to Expedite Response [195] is **GRANTED**. Defendants shall file their response to Plaintiffs' Motion to Refer the Stay Request to the Monitor for Review and Evaluation not later than August 19, 2013.

AO 72A
(Rev.8/82)

## Conclusion

In accordance with the foregoing, Defendants' Motion to Strike Affidavits [184] is **DENIED**, Defendants' Motion to De-Certify Class and to Dismiss for Lack of Standing [139] is **DENIED**, and Plaintiffs' Motion to Expedite the Response to Plaintiffs' Motion to Refer the Stay Request to the Monitor for Review and Evaluation [195] is **GRANTED**.  Defendants shall file their response to Plaintiffs' Motion to Refer the Stay Request not later than August 19, 2013.

**SO ORDERED**, this  13th  day of August, 2013.

**RICHARD W. STORY**
United States District Judge

11