IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RENITA BELTON and MATTHEW ERICKSON on behalf of themselves and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF GEORGIA, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:10-CV-0583-RWS |

### ORDER

This case comes before the Court on Defendants' Amended Motion to Stay Implementation of Sections of Remedy Order During Appeal [191]. Defendants' original Motion to Stay [187] is **DENIED as moot**, and the Court looks only to the Amended Motion to Stay. After reviewing the record, the Court enters the following Order.

### Background

Plaintiffs brought this action on March 3, 2010, on behalf of themselves and all those similarly situated pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the

Rehabilitation Act ("Section 504"), 29 U.S.C. § 701 et seq., alleging that Defendants failed to provide Deaf Georgians access to state-provided behavioral health and developmental disability services equal to that afforded to non-Deaf Georgians. (Compl., Dkt. [1].)

After finding Defendants liable under the ADA and Section 504, the Court referred the case to mediation concerning the issue of a remedy, reasoning that an appropriate remedy would best be developed through a collaborative effort by the Parties. (Order, Dkt. [115] at 41-42.) When mediation was not successful, the Court appointed Mr. Roger Williams to serve as Monitor and Independent Expert ("Monitor") to assist the Court and the Parties in the development of a remedial order and its implementation. (Order, Dkt. [166].)

On April 18, 2013, the Monitor submitted to the Court and the Parties a proposed remedial order. The Parties then submitted comments on the proposed remedial order to the Court. On June 18, 2013, after considering the Monitor's proposal and the Parties' comments, the Court issued a Remedial Order [172] directing the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD" or "Department") to implement certain

2

changes to bring its mental health services for the Deaf into compliance with the ADA and Section 504.

Defendants now request a stay of the Remedial Order [172] pending appeal, asserting that complying with select portions of the Order would constitute an undue burden and cause a fundamental alteration in the services of the DBHDD. (Defs.' Mem. of Law in Supp. of Mot. to Stay Implementation ("Defs.' Br."), Dkt. [191-1] at 2.)

## Discussion

The Court is required to consider the following factors when determining whether to issue a stay:

(1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) Whether the applicant will be irreparably injured absent a stay;

(3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) Where the public interest lies.

Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). After considering each of these factors, the Court is

unconvinced that any of them weighs in favor of granting a stay.

First, the Court is unpersuaded that Defendants are likely to succeed on the merits of their appeal. Normally, this first factor is the most important, and it requires demonstrating "a probable likelihood of success on the merits on appeal." Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986). Defendants argue that they are likely to prevail on their challenges to the Remedial Order [172] pursuant to Tennessee v. Lane, 541 U.S. 509 (2004), which held that Title II only requires States to make "reasonable modifications." Id. at 532. Title II does not require States to take steps imposing "an undue financial or administrative burden . . . or effect a fundamental alteration in the nature of the service." Id. Defendants devoted most of their Brief to this factor, marshaling numerous rationales for why they believe the Remedial Order [172], which was fashioned with input from the Monitor and both Parties, would place an undue burden on the Department. (See Defs.' Br., Dkt. [191-1] at 4-13.)

These arguments are not convincing. Rather than effecting a fundamental alteration in services, the Remedial Order [172] strives to ensure that Deaf persons have access to "the same service provided to hearing persons,

4

AO 72A
(Rev.8/82)

but provided with communication modes that permit them to actually utilize those services." (Pls.' Br. in Opp'n to Defs.' Mot. to Stay ("Pls.' Br."), Dkt. [199] at 17.) Nor would implementing programs to achieve this end, in coordination with the Monitor, impose an undue financial burden. Defendants have thus not shown a probable likelihood of success on the merits of their appeal.

Second, Defendants have not shown that they will be irreparably injured absent a stay. Defendants believe they will face irreparable injury if they spend funds and personnel time on implementing programs only to have those sections of the Remedial Order [172] set aside on appeal. (Defs.' Br., Dkt. [191-1] at 19.) Because Defendants are unlikely to succeed on appeal, they are unlikely to suffer irreparable injury from complying with the Remedial Order [172]. Furthermore, the Remedial Order [172] does not require immediate change; it sets goals the Department is to achieve over one to five years. Finally, considering Defendants failed to present evidence to rebut Plaintiffs' claims at Summary Judgment (see generally Order, Dkt. [115]), the Court cannot justify delaying compliance with the Remedial Order [172] just because Defendants now claim there is a remote possibility that some programs will be

5

set aside on appeal.

Third, Plaintiffs would face substantial injury if the Court granted a stay. As this Court previously found, Plaintiffs, "because of their deafness, and as a result of several institutional failures on the part of the State, are denied meaningful access to the mental health care services provided by the State to the general public." (Order, Dkt. [115] at 41.) According to the Supreme Court, "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." Lane, 541 U.S. at 531. Granting a stay would result in substantial injury to the Plaintiffs by prolonging the Deaf's exclusion from public mental health services in Georgia.

Finally, the Court finds that the public interest lies in proceeding with the steps laid out in the Remedial Order [172] to provide the Deaf with access to mental health services, not with delaying progress. The public interest in providing access to mental health services to a class of individuals suffering from a lack of these services outweighs the more generalized public interest in avoiding the costs of implementing these programs.

## Conclusion

In accordance with the foregoing, Defendants' Motion to Stay [187] is

**DENIED as moot**, and Defendants' Amended Motion to Stay [191] is **DENIED**.

    **SO ORDERED**, this __27th__ day of August, 2013.


                                        **RICHARD W. STORY**
                                        United States District Judge